## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LAURA A. MILLER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 18-cv-04738 |
| THE FRENCH PASTRY SCHOOL, LLC and THE BUTTER BOOK, LLC, | ) ) ) | Honorable Edmond E. Chang |
| Defendants. | ) ) ) | |
| THE FRENCH PASTRY SCHOOL, LLC and THE BUTTER BOOK, LLC, | ) ) ) | |
| Counter-Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| LAURA MILLER, | ) ) | |
| Counter-Defendant. | ) ) ) | |

## DEFNDANTS' ANSWER AND AFFFIRMATIVE DEFENSES TO COMPLAINT

Defendants, The French Pastry School, LLC ("FPS") and The Butter Book, LLC ("TBB") (collectively, the "Defendants"), by their attorneys, Beverly A. Berneman, Ashley L. Orler and Neil P. Johnson of Golan Christie Taglia LLP, as their Answer and Affirmative Defenses to Laura A. Miller's ("Miller") Complaint, state as follows:

### PARTIES

1.     Plaintiff is an individual currently residing at 164 Davis Court, Round Lake Park, Illinois 60073. At all times relevant to this action, Plaintiff has resided at this address.

**ANSWER:**    Upon information and belief, Defendants admit the allegations set forth in Paragraph 1.

2.    Upon information and belief, Defendant FPS maintains, and at all times relevant to this action has maintained, its principal place of business at 226 W. Jackson Boulevard, Suite 106, Chicago, Illinois 60606. FPS is a company organized and existing under the laws of the State of Delaware.

**ANSWER:**    Defendants admit that FPS is a Delaware corporation and maintains its principal place of business at 226 W. Jackson Boulevard, Suite 106, Chicago, Illinois 60606.

3.    Upon information and belief, Defendant TBB maintains, and at all times relevant to this action has maintained, its principal place of business at 235 W. Van Buren Street, Chicago, Illinois 60607. TBB is a company organized and existing under the laws of the State of Illinois.

**ANSWER:**    Defendants admit that TBB is an Illinois corporation and maintains its principal place of business at 235 W. Van Buren Street, Chicago, Illinois 60607.

## JURISDICATION AND VENUE

4.    This Court has exclusive original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338 because the claims seek the following relief: (1) a declaration of ownership of the copyrights, based upon authorship, in certain literary works identified herein as "The Glossary of Terms"[1] and the "Learn Pages"[2], which work is referred to herein at times collectively as the "Subject Work"; (2) a declaration that no implied license to the Subject Work has been granted to either Defendant under such copyrights; and (3) a declaration that FPS's

---

[1] The Glossary of Terms is a series of original, culinary-driven definitions and technical descriptions for ingredients, products, equipment, techniques, and miscellaneous items commonly used in the pastry kitchen. Each category of terms (e.g., spices, fruit, nuts and seeds, diary, types of pectin) are linked by corresponding language, syntactical structure, voice, and expression. Each term within each category follows a similar, complimentary style that has been interjected through the terms as a whole to create one, cohesive, comprehensive pastry glossary.

[2] The Learn pages are a comprehensive, academically geared collection of supplemental information that is directly linked to corresponding video demonstrations. The Learn Pages include, but are not limited to, tips, tricks of the trade, further explanation of certain ingredients, products, methodologies and advanced pastry techniques, as well as shelf live, storage, freezing, defrosting and reheating information when applicable. Each Learn Page is uniquely crafted to include any useful information that may not have been covered, or fully covered, in its corresponding video demonstration.

and/or TBB's unauthorized reproduction of, distribution of, preparation of derivative work based upon, and/or public display of the Subject Work, and/or any other use of the Subject Work by FPS and/or TBB in a manner falling within the scope of the exclusive rights conferred by U.S. copyright law to the rightful copyright owner(s), would constitute infringement of Miller's copyrights in the Subject Work. Plaintiff's claims arise under the Copyright Act, 17 U.S.C. §§ 101 *et seq.* and/or otherwise fall within the exclusive jurisdiction of the federal courts.

**ANSWER**: Paragraph 4 contains legal conclusions to which no response is required. To the extent a response is required, Defendants admit that this court has federal question jurisdiction over this matter, and deny the remaining allegations in Paragraph 4 including that Miller is entitled to declaratory relief.

5.      This Court has personal jurisdiction over FPS because FPS does business in the State of Illinois and in this judicial district; because FPS maintains its principal place of business in the State of Illinois and in this judicial district; and because the actions engaged in by FPS giving rise to this action occurred in the State of Illinois and in this judicial district.

**ANSWER:**      Paragraph 5 contains legal conclusions to which no response is required. To the extent a response is required, Defendants admit that this court has personal jurisdiction over FPS, and deny the remaining allegations in Paragraph 5.

6.      This Court has personal jurisdiction over TBB because TBB does business in the State of Illinois and in this judicial district; because TBB maintains its principal place of business in the State of Illinois and in this judicial district; and because the actions engaged in by TBB giving rise to this action occurred in the State of Illinois and in this judicial district.

**ANSWER**: Paragraph 6 contains legal conclusions to which no response is required. To the extent a response is required, Defendants admit that this court has personal jurisdiction over TBB, and deny the remaining allegations in Paragraph 5.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1), (2) & 1400(a) because Defendants reside in this judicial district.

**ANSWER:** Paragraph 7 contains legal conclusions to which no response is required. To the extent a response is required, Defendants admit the allegations in Paragraph 7.

## FACTUAL ALLEGATIONS

8.     In or around August, 2016, Miller was retained by FPS and/or TBB on an independent contractor basis to prepare certain work product which included, *inter alia,* the Subject Work.

**ANSWER:** Defendants admit that in August 2016 FPS and TBB entered into an agreement with Miller whereby Miller, as an independent contractor, was to edit certain content created and provided to Miller by FPS and TBB in connection with TBB's website. Defendants deny the remaining allegations in Paragraph 8.

9.     The parties did not enter into any formal written agreement memorializing the compensation or other terms of this independent contractor arrangement. Exhibit A attached hereto sets forth handwritten notes generated during the course of Miller's preparing the Subject Work reflecting the parties' initial mutual understanding as to Miller's financial compensation for preparing, *inter alia,* the Subject Work.

**ANSWER:**  Paragraph 9 contains legal conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 9.

10.     Miller did not receive any fringe benefits in connection with her work under this independent contractor arrangement.

**ANSWER:**  Defendants deny the allegations in Paragraph 10.

11.     Miller received 1099-MISC tax forms documenting, for tax purposes, the compensation she received for her work under this arrangement.

**ANSWER:**     Defendants admit that they provided Miller forms 1099-MISC for payments made

to Miller, and deny the remaining allegations in Paragraph 11.


12.     Miller performed all work in connection with this arrangement independently without supervision from anyone at FPS or TBB.

**ANSWER:**     Defendants deny the allegations in Paragraph 12.


13.     Miller has never been an employee of FPS.

**ANSWER:**     Defendants admit the allegations in Paragraph 13.


14.     Miller has never been an employee of TBB.

**ANSWER:**     Defendants admit the allegations in Paragraph 14.


15.     The parties never entered into any written or oral agreement to the effect that work prepared by Miller for Defendants would constitute a work made for hire.

**ANSWER:**     Paragraph 15 contains legal conclusions to which no response is required. To the

extent that a response is required, Defendants deny the allegations in Paragraph 15.


16.     The parties never entered into any written agreements concerning the terms under which Miller would complete any of the projects that she was asked by Defendants to complete.

**ANSWER:**     Defendants deny the allegations in Paragraph 16.


17.     The parties never discussed any issues relating to copyright ownership, or relating to the potential transfer or licensing of copyright in any work product prepared by Miller for Defendants, including the Subject Work, while the financial or other terms governing Miller's completion of the requested work were being discussed.

**ANSWER:**     Defendants deny the allegations in Paragraph 17.

18.     Miller raised the issue of a potential license of copyright to, *inter alia,* the Subject Work, to Defendants on or about April 26, 2018 and June 6, 2018. Miller raised these issues in response to Defendants' request for delivery of the final versions of the Subject Work (and other work product prepared by Miller). This email correspondence is attached hereto as Exhibit B (April 26, 2018) and C (June 6, 2018).

**ANSWER:**     Defendants admit that on April 26, 2018 and on June 6, 2018, Miller sent to

Defendants draft Copyright License Agreements that Defendants never executed, and deny the

remaining allegations in Paragraph 18.


19.     The parties never entered into any written or oral agreement concerning the assignment of, licensing of, or other transfer of copyright in any work. This is well reflected by Defendants having emailed Miller a proposed copyright assignment contract after Miller raised the issue of proper terms under which she might consider licensing copyright in, *inter alia,* the Subject Work, to Defendants. The email sent by Defendants with the attached proposed copyright assignment is attached hereto as Exhibit D.

**ANSWER:**     Defendants admit sending a Content Provider Agreement to Miller on May 8,

2018, and deny the remaining allegations in Paragraph 19.


20.     Miller consistently maintained the position that she would not deliver the final versions of the Subject Work to Defendants until the parties resolved their copyright dispute; i.e., until the parties arrived at mutually agreeable terms under which Defendants may display, *inter alia,* the Subject Work on The Butter Book web site.

**ANSWER:**     Defendants admit that Miller has not turned over her edits to Defendants'

copyrightable content, including but not limited to the Glossary of Terms and Learn Pages,

unless Defendants agree to sign the Draft License Agreements or not to reproduce, distribute,

publicly display or otherwise use the content edited by Miller, and deny the remaining

allegations in Paragraph 20.

21.     Only on July 5, 2018, did Miller agree to potentially provide Defendants with final copies of the Subject Work, subject to certain conditions, after the parties had been engaged in heated negotiations concerning suitable terms under which Miller might assign or license to Defendants her copyright in the Subject Work. In this July 5, 2018, correspondence (attached as Exhibit E) Miller provided defendants with the following express notice, however:

> Ms. Miller is, however, willing to provide final versions of The Glossary of Terms and learn pages by 5:00 pm (CDT) on Monday, July 9, on condition that such work will not be further reproduced, distributed, publicly displayed, or otherwise used in any manner that is covered by copyright, unless and until all necessary copyright issues are resolved. Further in this regard, please be advised that any such improper activity shall constitute infringement of Ms. Miller's copyright in The Glossary of Terms and the learn pages. Please let us know as soon as possible whether FPS agrees to accept The Glossary of Terms and learn pages under such conditions.

**ANSWER:** Defendants admit that Miller has not turned over her edits to Defendants' copyrightable content, including but not limited to the Glossary of Terms and Learn Pages, unless Defendants agree to sign the Draft License Agreements or not to reproduce, distribute, publicly display or otherwise use the content edited by Miller, and deny the remaining allegations in Paragraph 21.

22.     Defendants never discussed with Miller their proposed scope of use of the Subject Work beyond mentioning potentially desiring to use it in connection with a subscription-based web site. Defendants were referring to such web site internally at the time as "The Butter Book."

**ANSWER:**     Defendants deny the allegations in Paragraph 22.

23.     Miller subsequently became aware that, unbeknownst to her, Defendants had changed their plan and became focused on a licensing model instead whereby Defendants would license the content of The Butter Book web site to certain third-parties in the food services industry. Defendants have still never discussed such potential licensing with Miller.

**ANSWER:**     Defendants deny the allegations in Paragraph 23.

24.     There has been no implied non-exclusive copyright license to the Subject Work conveyed from Miller to either Defendant here, including at least because Miller timely objected

to delivering, and withheld, the Subject Work based upon the parties not having resolved the outstanding copyright issues. Further, there has never been any meeting of the minds between the parties regarding appropriate consideration for any potential licensing or assignment of copyright in the Subject Work.

**ANSWER:**     Paragraph 24 calls for a legal conclusion to which no response is required. To the

extent a response is required, Defendants deny the allegations set forth in Paragraph 24.

25.     Miller has never been advised of a launch date for The Butter Book web site. Defendants, by Anne Kauffman, Vice President at FPS, emailed Miller on April 24, 2018, stating as follows: "We do not have a launch date even as of yet. I will be certain to keep you updated as we progress." This email correspondence is attached hereto as Exhibit F. To date, Miller has not received any further information concerning a potential launch date for The Butter Book web site.

**ANSWER:**     Defendants admit Anne Kauffman sent an email to Miller on April 24, 2018, and

deny the remaining allegations in Paragraph 25.

26.     On or about April 26, 2018 and June 6, 2018, Miller provided Defendants with proposed copyright licenses setting forth proposed terms for a limited, exclusive, transfer of certain aspects of Miller's copyright in, *inter alia,* the Subject Work. This email correspondence and attached proposed copyright licenses are attached hereto as Exhibits B (April 26, 2018) and C (June 6, 2018).

**ANSWER:**     Defendants admit that Miller sent to Defendants draft Copyright License

Agreements that Defendants never executed, and deny the remaining allegations in Paragraph 26.

27.     With respect to the Learn Pages, on or about April 26, 2018, Miller proposed a license of rights to FPS that would allow FPS to publicly display the Learn Pages on The Butter Book web site for a period of one year in exchange for $30 per Learn Page for a total of $4,770 and 1.5% of gross revenue received from subscription fees charged to third-parties for access to The Butter Book. *See* Exhibit B, Proposed License to the Proprietary Material, at 2 (the proposed $4,770 amount was a component of the larger $6,300 figure covering the entirety of the Proprietary Material).

**ANSWER:** Defendants admit that on April 26, 2018 and on June 6, 2018, Miller sent to Defendants draft Copyright License Agreements that Defendants never executed, and deny the remaining allegations in Paragraph 27.

28. With respect to the Glossary of Terms, on or about June 6, 2018, Miller proposed a license of rights to FPS that would allow FPS to publicly display the Glossary of Terms on The Butter Book web site for a period of one year in exchange for $15 per glossary term for a total of $15,180, 1.5% of gross revenue received from subscription fees charged to third-parties for access to The Butter Book, and 1.5% of revenue received from advertising presented in connection. The Glossary of Terms. *See* Exhibit C, Proposed License to The Glossary of Terms, at 2. The copyright licenses proposed by Miller clarified that Miller's sharing of gross revenue generated from subscriptions to The Butter Book would not exceed 1.5% of such gross revenue in total for all licensing of copyright. *Id.* at 2-3.

**ANSWER:** Defendants admit that on April 26, 2018 and on June 6, 2018, Miller sent to Defendants draft Copyright License Agreements that Defendants never executed, and deny the remaining allegations in Paragraph 28.

29. Neither Defendants nor any employee or owner of either FPS or TBB have any colorable claim of ownership to copyright in the Subject Work, whether based upon authorship or otherwise.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 29.

30. With regard to The Glossary of Terms, Miller prepared such work independently. Defendants, in certain limited instances, provided comments and suggestions. Where Defendants did provide comments or suggestions, such comments or suggestions concerned ideas that Defendants felt should be encompassed by the definitions of the terms. No such input concerned the manner in which such ideas should be expressed. To the contrary, Defendants at all times expressly conveyed to Miller that it was her writing style and expressive voice that should be reflected in The Glossary of Terms.

**ANSWER:** Defendants deny the allegations in Paragraph 30.

31.     Further, Defendants only even provided such a germ of an idea in a minority of instances; and even in those instances where Defendants did provide some amount of original language, in the overwhelming majority of instances such language was not ultimately included in the final draft of The Glossary of Terms.

**ANSWER:**     Defendants deny the allegations in Paragraph 31.

32.     Miller prepared The Glossary of Terms by analyzing and assimilating multiple sources of relevant information for each term and independently crafting original, creative means for expressing the information relevant to the terms, Miller's originality and creativity is reflected both in the text of the final draft of the Glossary of Terms as well as in the selection as to which information to include and which not to include.

**ANSWER:**     Defendants deny the allegations in Paragraph 32.

33.     Much of the information that Defendants purport to have originated was in fact plagiarized from other sources. For example, an overwhelming amount of the text that Defendants provided for purposes of preparing The Glossary of Terms was lifted directly from The Food Lover's Glossary of Culinary Terms (www.culinarysoftware.com/glossary_cs.htm). Other text provided by Defendants was pulled from Quizlet: Learning Tools & Flashcards (www.quizlet.com).

**ANSWER:**     Defendants deny the allegations in Paragraph 33.

34.     The definitions set out in The Glossary of Terms, as crafted by Miller, constitute original, creative text, fixed in a tangible medium of expression.

**ANSWER:**     Defendants deny the allegations in Paragraph 34.

35.     With regard to the Learn Pages, Defendants provided limited original information for less than one-third of the Learn Pages, much of which was not ultimately incorporated into the final drafts due to irrelevance and/or lack of direction and focus.

**ANSWER:**     Defendants deny the allegations in Paragraph 35.

36.     Miller had full access to the scripts for which the Learn Pages were prepared. Based upon these scripts, Miller drafted the original language that served as the textual foundation for the Learn Pages. In certain limited instances Defendants provided suggestions and/or factual input at which point Miller further revised and crafted the Learn Pages to incorporate such comments, which comments did not in any way imply any instructions as to the manner of expression.

**ANSWER:**     Defendants deny the allegations in Paragraph 36.

37.     The Learn Pages, as crafted by Miller, constitute original, creative text, fixed in a tangible medium of expression.

**ANSWER:**     Defendants deny the allegations in Paragraph 37.

38.     No employee or owner of either FPS or TBB qualifies as an author of the Subject Work under U.S. copyright law.

**ANSWER:** Paragraph 38 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 38.

39.     Miller is the sole author of The Glossary of Terms.

**ANSWER:**     Defendants deny the allegations of Paragraph 39.

40.     Miller is the sole author of the Learn Pages.

**ANSWER:**     Defendants deny the allegations of Paragraph 40.

41.     Miller is the sole owner of valid copyright in The Glossary of Terms.

**ANSWER:**     Paragraph 41 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 41.

42.     Miller is the sole owner of valid copyright in the Learn Pages.

**ANSWER:**     Paragraph 42 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 42.

43.     Miller applied to the U.S. Copyright Office for registration of her copyright in The Glossary of Terms on or about May 31, 2018. *See* Exhibit G. That registration application has been assigned case number 1-6635507751 and remains pending.

**ANSWER:**     Defendants admit that Miller appeared to have applied for registration of certain copyrights with the U.S. Copyright Office, and deny the remaining allegations in Paragraph 43.

44.     Miller applied to the U.S. Copyright Office for registration of her copyright in the Learn Pages on or about May 9, 2018. *See* Exhibit G. That registration application has been assigned case number 1-6568037271 and remains pending.

**ANSWER:**     Defendants admit that Miller appeared to have applied for registration of certain copyrights with the U.S. Copyright Office, and deny the remaining allegations in Paragraph 44.

45.     Defendants, including through counsel, have repeatedly expressed their intention to infringe Miller's copyright in the Subject Work at least by publicly displaying the Subject Work on The Butter Book web site once the site is launched. *See, e.g.,* the email correspondence attached hereto as Exhibit E.

**ANSWER:**     Defendants admit that Miller appeared to have applied for registration of certain copyrights with the U.S. Copyright Office, and deny the remaining allegations in Paragraph 45.

## COUNT ONE
## CLAIM FOR DECLARATORY RELIEF –
## AUTHORSHIP AND COPYRIGHT OWNERSHIP

46.     Plaintiff hereby incorporates the allegations set forth in Paragraph 1 through 45 above as if fully set forth herein.

**ANSWER:**     Defendants repeat and reallege their answers to Paragraphs 1-45 as if fully stated herein.

47.     As a result of the above, there is an actual, justiciable, and substantial controversy between Plaintiff and Defendants arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.* In light of this dispute, Plaintiff seeks a declaration of ownership based upon authorship of the Subject Work. Such claim arises under federal copyright law and falls within the exclusive jurisdiction of the federal court.

**ANSWER:**     Defendants admit there is an actual, justiciable, and substantial controversy

between Plaintiff and Defendants, Plaintiff seeks declaratory relief, and the federal court has

jurisdiction over this matter.  Defendants deny the remaining allegations in Paragraph 47.

48.     This action is ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. § 2201. A final ruling by this Court will determine the ownership based upon authorship of the Subject Work and will settle the controversy as to each party's ownership of the Subject Work.

**ANSWER:**     Paragraph 48 sets forth legal conclusions to which no response is required. To the

extent a response is required, Defendants deny the allegations in Paragraph 48.

49.     Plaintiff brings this claim for a judgment declaring that no employee or owner of either FPS or TBB authored (whether solely or jointly) The Glossary of Terms and that, accordingly, neither FPS, nor TBB, nor any employee or owner of either FPS or TBB are equal co-owners of the copyright in The Glossary of Terms, that they do not hold equal undivided interests in such copyright, and that Defendants and any employee or owner of FPS or TBB are barred from asserting any such authorship and/or ownership claims.

**ANSWER:**     Defendants admit that Miller purports to bring a claim seeking a declaratory

judgment, and deny the remaining allegations in Paragraph 49.

50.     Plaintiff further seeks a judgment declaring that no employee or owner of either FPS or TBB authored (whether solely or jointly) the Learn Pages and that, accordingly, neither FPS, nor TBB, nor any employee or owner of either FPS or TBB are equal co-owners of the copyright in the Learn Pages, that they do not hold equal undivided interests in such copyright, and that Defendants and any employee or owner of FPS or TBB are barred from asserting any such authorship and/or ownership claims.

**ANSWER:**     Defendants admit that Miller purports to bring a claim seeking a declaratory

judgment, and deny the remaining allegations in Paragraph 50.

## COUNT TWO
## CLAIM FOR DECLARATORY RELIEF –
## NO IMPLIED NON-EXCLUSIVE LICENSE OF COPYRIGHT

51.     Plaintiff hereby incorporates the allegations set forth in Paragraphs 1 through 50 above as if fully set forth herein.

**ANSWER:**     Defendants repeat and reallege their answers to Paragraphs 1-50 as if fully stated herein.

52.     As a result of the above, there is an actual, justiciable, and substantial controversy between Plaintiff and Defendants arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.* In light of this dispute, Plaintiff seeks a declaration that Plaintiff has not impliedly granted Defendants (whether individually or collectively) a license under Plaintiff's copyright in The Glossary of Terms. Such claim arises under federal common law as it relates to copyright and falls within the exclusive jurisdiction of the federal courts.

**ANSWER:**     Defendants admit there is an actual, justiciable, and substantial controversy between Plaintiff and Defendants, Plaintiff seeks declaratory relief, and the federal court has jurisdiction over this matter.  Defendants deny the remaining allegations in Paragraph 52.

53.     As a result of the above, there is an actual, justiciable, and substantial controversy between Plaintiff and Defendants arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.* In light of this dispute, Plaintiff seeks a declaration that Plaintiff has not impliedly granted Defendants (whether individually or collectively) a license under Plaintiff's copyright in the Learn Pages. Such claim arises under federal common law as it relates to copyright and falls within the exclusive jurisdiction of the federal courts.

**ANSWER:**     Defendants admit there is an actual, justiciable, and substantial controversy between Plaintiff and Defendants, Plaintiff seeks declaratory relief, and the federal court has jurisdiction over this matter.  Defendants deny the remaining allegations in Paragraph 53.

54.     This action is ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. § 2201. A final ruling by this Court will determine whether Defendants (individually or collectively) may properly publicly display, distribute, or otherwise use The Glossary of Terms and/or the learn pages in a manner that would, absent such alleged implied license, infringe Plaintiff's copyrights in the subject work.

**ANSWER:**    Paragraph 54 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 54.

55.    Plaintiff brings this claim for a judgment declaring that Plaintiff has not impliedly granted FPS, and likewise has not impliedly granted TBB, a license under its copyright in The Glossary of Terms.

**ANSWER:**    Defendants admit that Miller purports to bring a claim seeking a declaratory judgment, and deny the remaining allegations in Paragraph 55.

56.    Plaintiff further seeks a judgment declaring that Plaintiff has not impliedly granted FPS, and likewise has not impliedly granted TBB, a license under its copyright in the Learn Pages.

**ANSWER:**    Defendants admit that Miller purports to bring a claim seeking a declaratory judgment, and deny the remaining allegations in Paragraph 56.

<div align="center">

**COUNT THREE**
**CLAIM FOR DECLARATORY RELIEF –**
**COPYRIGHT INFRINGEMENT**

</div>

57.    Plaintiff hereby incorporates the allegations set forth in Paragraphs 1 through 56 above as if fully set forth herein.

**ANSWER:**    Defendants repeat and reallege their answers to Paragraphs 1-56 as if fully stated herein.

58.    As a result of the above, there is an actual, justiciable, and substantial controversy between Plaintiff and Defendants arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.* In light of this dispute, Plaintiff seeks a declaration that the unauthorized reproduction of, distribution of, preparation of derivative works based upon, public display of, performance of, or other use of The Glossary of Terms (or any work substantially similar thereto) in a manner exclusively allocated to the copyright owner(s) under U.S. copyright law shall constitute infringement of Plaintiff's copyright in The Glossary of Terms. Such claim arises under federal copyright law and falls within the exclusive jurisdiction of the federal courts.

**ANSWER:** Defendants admit there is an actual, justiciable, and substantial controversy between Plaintiff and Defendants, Plaintiff seeks declaratory relief, and the federal court has jurisdiction over this matter. Defendants deny the remaining allegations in Paragraph 58.

59. As a result of the above, there is an actual, justiciable, and substantial controversy between Plaintiff and Defendants arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.* In light of this dispute, Plaintiff seeks a declaration that the unauthorized reproduction of, distribution of, preparation of derivative works based upon, public display of, performance of, or other use of the Learn Pages (or other work substantially similar thereto) in a manner exclusively allocated to the copyright owner(s) under U.S. copyright law shall constitute infringement of Plaintiff's copyright in the Learn Pages. Such claim arises under federal copyright law and falls within the exclusive jurisdiction of the federal courts.

**ANSWER:** Defendants admit there is an actual, justiciable, and substantial controversy between Plaintiff and Defendants, Plaintiff seeks declaratory relief, and the federal court has jurisdiction over this matter. Defendants deny the remaining allegations in Paragraph 59.

60. This action is ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. § 2201. A final ruling by this Court will determine whether Defendants (individually or collectively) may properly reproduce, distribute, prepare derivative works based upon, publicly display, perform, or otherwise use the Glossary of Terms (or other work substantially similar thereto) in a manner that U.S. copyright law exclusively allocates to the copyright owner(s) or whether such action(s) would constitute infringement of Plaintiff's copyright in The Glossary of Terms.

**ANSWER:** Paragraph 60 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 60.

61. This action is ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. § 2201. A final ruling by this Court will determine whether Defendants (individually or collectively) may properly reproduce, distribute, prepare derivative works based upon, publicly display, perform, or otherwise use the Learn Pages (or other work substantially similar thereto) in a manner that U.S. copyright law exclusively allocates to the copyright owner(s) or whether such action(s) would constitute infringement of Plaintiff's copyright in the Learn Pages.

**ANSWER:** Paragraph 61 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 61.

62.     Plaintiff brings this claim for a judgment declaring that the unauthorized reproduction of, distribution of, preparation of derivative works based upon, public display of, performance of, or other use of The Glossary of Terms (or other work substantially similar thereto) in a manner exclusively allocated to the copyright owner(s) under U.S. copyright law shall constitute infringement of Plaintiff's copyright in The Glossary of Terms.

**ANSWER:** Defendants admit that Miller purports to bring a claim seeking a declaratory judgment, and deny the remaining allegations in Paragraph 62.

63.     Plaintiff further seeks a judgment declaring that the unauthorized reproduction of, distribution of, preparation of derivative works based upon, public display of, performance of, or other use of the Learn Pages (or other work substantially similar thereto) in a manner exclusively allocated to the copyright owner(s) under U.S. copyright law shall constitute infringement of Plaintiff's copyright in the Learn Pages.

**ANSWER:** Defendants admit that Miller purports to bring a claim seeking a declaratory judgment, and deny the remaining allegations in Paragraph 63.

## AFFIRMATIVE DEFENSES

### Facts Common to All Affirmative Defenses

64.     Defendants hereby incorporate and reallege Paragraphs 1-63 of their Answer to Plaintiff's Complaint as if set forth in Paragraph 64 of its Affirmative Defenses.

65.     In 1995, Jacquy Pfeiffer ("Chef Pfeiffer") and Sébastien Canonne ("Chef Canonne"), two internationally-renowned pastry chefs, founded FPS in Chicago.

66.     FPS provides innovative, effective, and intensive education to students in Chicago, Illinois to achieve excellence in the pastry, baking, and confectionery arts, and is the

only major culinary institute in North America solely focused on providing these educational programs.

67.     In 2015, Chefs Pfeiffer and Canonne founded TBB, a company that is developing an online tool to share the world-class experience and knowledge of Chefs Pfeiffer and Canonne with the international public who are not seeking the full-time certification experience of FPS's programs taught in Chicago, Illinois.

68.     TBB began developing a website in 2015 based on the superior knowledge and experience of its founders to teach pastry, baking and confectionary arts to food enthusiasts and professionals through a robust video library, expert chef guidance, and web-based resources (the "Website").

69.     In 2015, Chefs Pfeiffer and Canonne, with the assistance from employees of FPS and TBB, began drafting scripts for videos (the "Scripts") and filming videos (the "Videos") for the Website. The Videos provide step-by-step instructions and demonstrations on how to create certain pastries, baked goods, and confectionary items.

70.     In 2015, Chef Pfeiffer and Canonne, with the assistance from employees of FPS and TBB, began drafting content for the Website that provides the reader an explanation of the fundamentals of the food science behind each showcased in the Videos (the "Learn Pages").

71.     In In 2015, Chef Pfeiffer and Canonne, with the assistance from employees of FPS and TBB, began drafting definitions for certain terms for the Website (the "Glossary Terms"). The Website and the Learn Pages contain hyperlinks to the Glossary Terms.

72.     The Website also contains articles written by Chefs Pfeiffer and Canonne and other internationally-recognized chefs regarding the art and science of creating pastries, baked goods, and confectionary items (the "Articles").

73.     In 2015, Chefs Pfeiffer and Canonne, with assistance from employees of FPS and TBB, began drafting for the Website summary descriptions of Website content organized by course (i.e. the croissant course) or series (i.e. the chocolate series) (respectively, the "Course Descriptions" and "Series Descriptions").

74.     In 2015, Chefs Pfeiffer and Canonne, with assistance from employees of FPS and TBB, drafted for the Website biographical descriptions of their and other FPS and TBB employees' professional experience and accolades (the "Biographies").

75.     In 2015, Chefs Pfeiffer and Canonne, with assistance from employees of FPS and TBB, drafted for the Website short articles pertaining to the pastry, baking, and confectionery arts (the "Blog Entries").

76.     Chefs Pfeiffer and Canonne utilized their combined seventy-five (75) years of experience in the pastry, baking and confectionary arts and assistance of employees of FPS and TBB to develop the Website and its content, including the Scripts, Videos, Learn Pages, Glossary Terms, Articles, Course Descriptions, Series Descriptions, Biographies and Blog Entries (collectively, the "Website Content").

77.     In August 2016, FPS and TBB entered into an agreement with Miller whereby Miller, as an independent contractor, was to edit certain Website content created and provided to Miller by FPS and TBB (the "Contract")

78.     Miller, a journalist, is not a practicing pastry chef and has limited experience in the pastry baking and confectionary arts.

79.     The Contract between FPS, TBB and Miller included the following terms regarding the Learn Pages and Glossary Terms:

> (a) FPS and TBB would send a certain number of Glossary Terms created by FPS and TBB to Miller to edit for consistency and pay Miller $15.00 per Glossary

Term she edited; and

(b) FPS and TBB would send Learn Pages created by FPS and TBB to Miller to identify Glossary Terms in the Learn Pages for consistency with the Glossary Terms and Pay Miller $30.00 per term she identified;

(c) FPS and TBB would send Scripts created by FPS and TBB to Miller to identify Glossary Terms in the Scripts for consistency with the Glossary Terms and pay Miller $30.00 per term she identified;

(d) Miller would turnover to FPS and TBB all Website Content she received from FPS and TBB and all edits she made to the Website Content upon completion of the edits; and

(e) Miller would sign an agreement to maintain the confidentiality of the Website Content.

80.    The material terms of the Contract were agreed to orally and in writing by FPS, TBB and Miller.

81.    Many of the material terms of the Contract were summarized in writing by FPS, TBB and Miller. A true and accurate copy of the summary of the Contract terms is attached hereto as **Exhibit A.**

82.    On August 4, 2016, Chefs Pfeiffer and Canonne, FPS, and Miller entered into a Confidentiality Agreement, which requires Miller to "indefinitely maintain the [information, documents and other materials provided by FPS and TBB to Miller] in strict confidence and secrecy" and prohibits "disclosure, directly or indirectly" of the information, documents and other materials provided by FPS and TBB to Miller "to any third party without the express prior written consent of [Chefs Pfeiffer and Canonne and FPS]." A true and accurate copy of the Confidentiality Agreement is attached hereto as **Exhibit B.**

83.    The Confidentiality Agreement defines Confidential Information and states, "Immediately upon request from [Chef Pfeiffer, Chef Canonne, or FPS], [Miller] shall return all copies of documents containing Confidential Information and remove all digitally stored data

containing Confidential Information from any digital storage device in [Miller's] possession or control." (Ex. B at ¶ 2.)

84.     After August 2016, FPS, TBB and Miller agreed to the following additional terms of the Contract (the "Additional Contract Terms") regarding the Learn Pages and Glossary Terms:

>   (a) FPS and TBB would send additional Glossary Terms created by FPS and TBB to Miller to edit for consistency and pay Miller $15.00 per Glossary Term she edited;
>
>   (b) Miller would re-review for consistency all Glossary Terms already edited and FPS and TBB would pay a flat fee of $750.00 to Miller for this re-review;
>
>   (c) FPS and TBB would send 30 Learn Pages regarding fundamentals of pastry, baking and confectionary arts created by FPS and TBB to Miller to edit for consistency and pay Miller a flat fee of $3,000.00 for these edits;
>
>   (d) Miller would turnover to FPS and TBB all Website Content she received from FPS and TBB and all edits she made to the Website Content upon completion of the edits.

85.     The Additional Contract Terms were agreed to orally and in writing by FPS, TBB and Miller.

86.     Many of the Additional Contract Terms were summarized in writing by FPS, TBB and Miller.  A true and accurate copy of the summary of the Additional Contract Terms is attached hereto as **Exhibit C**.

87.     Between October 27, 2016 and February 28, 2018, FPS and TBB paid Miller $45,166.45 pursuant to the Contract and Additional Contract Terms.

88.     FPS issued IRS Forms 1099-Misc to Miller for the payments made to Miller pursuant to the Contract and Additional Contract Terms.

89.     On April 20, 2018, for the first time, Miller stated that she would send licensing agreements to FPS and TBB related to the work Miller completed pursuant to the Contract and Additional Contract Terms.

90.     On April 26, 2018 and on June 6, 2018, Miller sent to FPS and TBB a draft Copyright License Agreement for the Website Content, including but not limited to the Learn Pages and Glossary Terms.

91.     FPS and TBB never signed the Draft License Agreements and contest Miller's copyright claim over the Website Content.

92.     Prior to April 20, 2018, Miller never mentioned, discussed or otherwise asserted any copyright or other ownership interest in the Website Content or the work she performed pursuant to the Contract or the Additional Contract Terms.

93.     Prior to April 20, 2018, Miller never mentioned, discussed or otherwise asserted any intention to license the Website Content or the work she performed pursuant to the Contract or the Additional Contract Terms.

94.     On or July 5, 2018, Miller, through her counsel, offered to turnover to FPS and TBB all edits to the Website Content that Miller continues to retain in her possession on the condition that such will not be further reproduced, distributed, publicly displayed or otherwise used in any manner by FPS or TBB.

95.     To date, Miller has failed and refused to turnover her edits to the Website Content to FPS and TBB unless (1) FPS and TBB agree that Miller owns the content and they agree to enter into the Draft License Agreements; or (2) FPS and TBB agree not to reproduce, distribute, publicly display or otherwise use the Website Content edited by Miller. FPS and TBB have not accepted Miller's offer to turnover with conditions.

**First Affirmative Defense**
**Work-For-Hire**

96.     FPS and TBB repeat and reallege Paragraphs 64-95 of the Affirmative Defenses as if fully set forth herein.

97.     Miller's edits to the Website Content constitute a contribution to a collective work, the Website, or a supplementary work in relation to the Website.

98.     The parties expressly agreed pursuant to the Contract, Confidentiality Agreement and the Additional Contract Terms that Miller's edits to the Website Content constitutes works made for hire pursuant to 17 U.S.C. §101.

99.     Miller's edits to the Website Content constitute works made for hire pursuant to 17 U.S.C. §101.

**Second Affirmative Defense**
**No Copyright Interest**

100.    FPS and TBB repeat and reallege Paragraphs 64-95 of the Affirmative Defenses as if fully set forth herein.

101.    FPS and TBB own the copyrights to the Website Content and any edits Miller made to the Website Content.

102.    Miller does not own any copyrights to the Website Content and any edits she made to the Website Content.

103.    Miller did not independently create the Website Content and her edits thereto do not rise to the level of originality required under the Copyright Act, 17 U.S.C. §102(a).

**Third Affirmative Defenses**
**Not Copyrightable**

104.    FPS and TBB repeat and reallege Paragraphs 64-95 of the Affirmative Defenses as if fully set forth herein.

105.     Miller's edits to the Website Content constitute unprotectable expression as there are only a limited number of ways Miller could have edited the Website Content.

106.     Miller's edits to the Website Content merged into the Website Content created by FPS and TBB.

107.     Miller's edits to the Website Content were not independently created and thus do not constitute original content.

108.     Miller's edits to the Website Content constitute editorial contributions there are not copyrightable.

### Fourth Affirmative Defense
### Implied License

109.     FPS and TBB repeat and reallege Paragraphs 64-95 of the Affirmative Defenses as if fully set forth herein.

110.     Beginning in August 2016, FPS and TBB requested Miller edit and create certain Website Content to be used by FPS and TBB for the TBB Website.

111.     At the time Miller agreed to edit and create certain Website Content at the request of FPS and TBB, Miller knew that FPS and TBB would reproduce, distribute, publicly display and/or otherwise use the Website Content edited and created by Miller.

112.     Miller, at the request of FPS and TBB, edited and created certain Website Content.

113.     After Miller edited and created certain Website Content at the request of FPS and TBB, she attempted to change the terms of her agreement with FPS and TBB by offering to turnover to FPS and TBB all Website Content she edited and created on the condition that FPS and TBB agree (a) that Miller owns the Website Content she edited and created and sign the Draft License Agreements; or (b) not to further reproduce, distribute, publicly display or

otherwise use the Website Content Miller edited and created. FPS and TBB have not accepted Miller's offer to turnover with conditions.

114. FPS and TBB have an implied fully-paid license to reproduce, distribute, publicly display and/or otherwise use the Website Content that Miller edited and created at the request of FPS and TBB.

WHEREFORE, Defendants, The French Pastry School, LLC and The Butter Book, LLC respectfully request this Court enter judgment in their favor and against Plaintiff, Laura A. Miller, and grant such other and further relief as the Court deems just and appropriate.

Dated: September 17, 2018          Respectfully submitted,

<div style="margin-left:50%;">

The French Pastry School, LLC and
The Butter Book, LLC,
Defendants/Counter-Plaintiffs,

By:    */s/ Ashley L. Orler*
         One of their Attorneys

</div>

Beverly A. Berneman, Esq. (#6189418)
Ashley L. Orler, Esq. (#6297339)
Neil P. Johnson, Esq. (#6324125)
GOLAN CHRISTIE TAGLIA LLP
70 W. Madison Street, Suite 1500
Chicago, Illinois 60602
(312) 263-2300
baberneman@gct.law
alorler@gct.law
npjohnson@gct.law

## CERTIFICATE OF SERVICE

I, Ashley L. Orler, an attorney, certify that I caused a copy of Defendants' Answer and

Affirmative Defenses to Complaint to be served upon the following:

Mr. Theodore J. Chiacchio      Mr. Michael M. Schmahl
Chiacchio IP      Pollick & Schmahl, LLC
605 N. Michigan Avenue      200 E. Randolph Street
Suite 454      Suite 5100
Chicago, IL 60611      Chicago, IL 60601
tchiacchio@chiacchioip.com      mschmahl@pollickschmahl.com

by causing a copy of same to be served electronically via CM/ECF, this 17th day of September,

2018.

/s/ Ashley L. Orler